IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARK HOFFMAN,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **BCI ACRYLIC, LLC D/B/A BATH PLANET** **and** **NORTHWEST BATH SPECIALISTS, LLC D/B/A BATH PLANET OF SEATTLE** | |
| *Defendants.* | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Mark Hoffman ("Plaintiff" or "Mr. Hoffman") brings this Class Action Complaint and Demand for Jury Trial against Defendants BCI Acrylic, LLC d/b/a Bath Planet and Northwest Bath Specialists, LLC d/b/a Bath Planet of Seattle ("Defendants" or "Bath Planet" or "Bath Planet Seattle") and alleges as follows:

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* §

2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Bath Planet violated the TCPA by sending telemarketing text messages and calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

**PARTIES**

4. Plaintiff Mark Hoffman is an individual.

5. Defendant BCI Acrylic, LLC d/b/a Bath Planet, is an Illinois manufacturer of engineered bathroom systems, such as walk-in showers, tubs, and the like. Bath Planet is a franchisor that sells its products and services through franchisees like Defendant Bath Planet Seattle.

6. Defendant Northwest Bath Specialists, LLC d/b/a Bath Planet Seattle is a Washington State-based franchisee of Bath Planet that sells Bath Planet's goods and services.

## JURISDICTION AND VENUE

7. This Court has federal jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims.

8. This Court has general personal jurisdiction over Bath Planet because the company has its headquarters and principal place of business in this District. This Court has specific jurisdiction over Bath Planet Seattle because it is a franchisee of an Illinois-corporation, which such franchise agreement, upon information and belief, contains Illinois choices of law and forum.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the telemarketing at issue here, the sending and orchestration of the illegal calls to sell products manufactured in this District, occurred in this District.

## BACKGROUND

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

3

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

14. The TCPA and its implementing regulations require that "any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

## FACTUAL ALLEGATIONS

15. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the messages at issue.

17. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

18. Plaintiff's telephone number, 206-XXX-XXXX, is a residential, non-commercial telephone number.

19. The telephone number is assigned to a cellular telephone service.

20. The 206 Area Code is associated with the State of Washington.

21. The Plaintiff is a Washington resident.

22. It is a violation of the Washington CEMA to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service..." RCW 19.190.060. 62.

4

23. "'Commercial electronic text message' means an electronic text message sent to promote real property, goods, or services for sale or lease." *Id.*

24. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, et seq. RCW 19.190.100; *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154-55 (Wash. 2017).

25. Mr. Hoffman uses the number for personal, residential, and household reasons.

26. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

27. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there in 2007.

28. Plaintiff has never been a customer of Bath Planet.

29. Despite this, the Plaintiff received at least 37 calls and text messages from either Bath Planet or Bath Planet Seattle between December 5, 2024 and present from the caller ID "253-246-7906".

30. The Caller ID Name (CNAM) record for this caller ID is "Bath Planet."

31. The first call stated, "Hi there. This is Melissa with Bath Planet. I'm reaching out to follow up on your online inquiry for a complimentary quote. Don't miss out on this month's fantastic incentives and discounts. You can go ahead and give us a call back at 253-246-7906. Select option 1 to get that set up today."

32. The Plaintiff did not call back. However, that very same day, the Plaintiff received the following text message:

> Hi there! This is Melissa from Bath Planet here. I'm excited to follow up on your online inquiry for a complimentary quote. Don't miss out on this month's fantastic incentives and discounts! Give us a call at 253-246-7906 (select option 1) to get set up today!

5

33. The Plaintiff continued to get calls and text messages from "Melissa from Bath Planet" in the ensuing days, several of which "Melissa" left identical or nearly identical voicemails.

34. Finally, the Plaintiff spoke to "Melissa" on December 27, 2024. During this call, the Plaintiff asked for "Melissa's" identity, including her last name and why he was receiving illegal calls, to which "Melissa" responded that she worked for "Bath Planet" and that was their official legal name. "Melissa" would not provide her last name, which was also not provided in any other call.

35. Upon information and belief, the aforementioned calls were calls placed by Bath Planet Seattle as part of its franchise relationship with Bath Planet.

36. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

37. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

38. The FCC has instructed that sellers such as Bath Planet may not avoid liability by hiding behind third party franchisees, such Bath Planet Seattle:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." - *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

39. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

40. In other words, the Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place telemarketing calls. *Id.* at 6587.

41. Bath Planet hired, encouraged, permitted, and enjoyed the benefits of the widespread mass calling conduct by its franchisees, including Bath Planet Seattle.

42. Indeed, Bath Planet's own corporate website directs interested persons to contact Franchisees through that website and permits the ability for interested persons to submit their information to Bath Planet, which Bath Planet will then pass along to the selected local franchisee:



*Shower Installers of Seattle*, BATHPLANET https://www.bathplanet.com/locator/4392.3388.bath-planet-of-seattle/ [https://archive.md/rQ8sQ].

43. Bath Planet is liable as a franchisor for Defendant Bath Planet Seattle's conduct and telemarketing calls placed by Bath Planet Seattle to sell and generate goods and services to be provided by both entities.

44. Both Defendants sought a financial benefit from the calls placed to putative class members as both attempted to derive business from these calls: Bath Planet Seattle for installation services, and Bath Planet for goods (which Bath Planet would provide to Bath Planet Seattle for installation).

45. Upon information and belief, Bath Planet Seattle is an *exclusive* franchisee and installer. That is to say that Bath Planet Seattle cannot install, for instance, a Kohler shower; it must only install Bath Planet's products, the same way a McDonalds cannot sell a Wendy's chicken nugget.

46. In other words, Bath Planet Seattle sells Bath Planet's goods and provides their own installation services under the Bath Planet name. In such a way, the relationship is a mutually beneficial agency relationship in that Bath Planet benefits from a nationwide reach of installers who install their products in a manner that they can tightly control, including by directing the preparation of construction sites in a manner most conducive to the products Bath Planet manufactures. In turn, Bath Planet Seattle relies on Bath Planet's name recognition, advertising strength, and nationwide and regionalized advertising and lead generation campaigns to grow its business.

47. Upon information and belief, Bath Planet also directs its franchisees to follow its installation and sales model, and provides franchisees with leads, including from its own website, which franchisees like Bath Planet Seattle will call. In such a way, Bath Planet retains control over marketing conducted in its own name.

48. Bath Planet derives profit from and exercises control over its franchisees (including control of marketing), including franchisee Bath Planet Seattle.

49. Furthermore, all the calls and messages which were sent identified "Bath Planet" and not "Bath Planet Seattle" or Northwest Bath Specialists as the caller and entity on whose behalf the caller was acting.

50. Upon information and belief, such calls using and naming only "Bath Planet" were made consistently with Bath Planet's own guidelines, which prohibit Bath Planet Seattle from identifying itself under anything else other than the Bath Planet name.

51. As such, Bath Planet controlled the content of Bath Planet Seattle's telemarketing.

52. Accordingly, Bath Planet Seattle had actual and/or apparent authority to act on behalf of Bath Planet.

53. Bath Planet acted as a principal to Bath Planet Seattle, who acted as Bath Planet's agent.

54. Bath Planet is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Bath Planet Seattle's unlawful calls (or its own calls).

55. Bath Planet is directly and/or vicariously liable under the TCPA as alleged in this Complaint as Bath Planet encouraged and benefitted from Bath Planet Seattle's violative conduct and/or oversaw or had the right to oversee the telemarketing calls at issue and/or placed the calls at issue, including by providing Bath Planet Seattle leads which Bath Planet Seattle would then call, and by not requiring Bath Planet Seattle and its other franchisees to identify themselves by full first and last name.

56. Shortly after the Plaintiff received the calls at issue, he sent correspondence to Bath Planet, who disclaimed responsibility because it claimed it did not place the calls.

57. However, with full knowledge that Bath Planet Seattle was violating multiple parts of the TCPA, including identification requirements, Bath Planet did nothing.

58. Bath Planet thus had full knowledge of Bath Planet Seattle's illegal conduct, including non-compliance with identification requirements, and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

59. The aforementioned facts also demonstrate that Bath Planet failed to supervise Bath Planet Seattle or enforce their compliance with applicable laws and regulations, including inquiring of Bath Planet Seattle as to the calls they were placing on Bath Planet's behalf and ensuring that its franchisees were complying with the TCPA's other requirements, including the provision of a last name during telemarketing calls.

60. Finally, Bath Planet could have terminated Bath Planet Seattle.

61. It did not.

62. By virtue of providing leads to Bath Planet Seattle, which Bath Planet Seattle would then call, and accepting the benefits of and directing the conduct of and other indicia of the calls at issue described above, Bath Planet directed Bath Planet Seattle, including as to the the content, method, and criteria of the communications that Bath Planet Seattle would use in their calling.

63. A reasonable franchisor like Bath Planet whose franchisees are making calls would investigate into the reasons why their franchisees would be calling telephone numbers on the Do Not Call Registry without consent using the Bath Planet name, let alone not following the TCPA's other requirements.

64. It did not.

65. Bath Planet permitted Bath Planet Seattle to be its franchisee without a proper investigation and did not terminate them when they were informed of Bath Planet Seattle's illegal calling conduct.

66. As such, they knowingly ratified Bath Planet Seattle's conduct.

67. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

68. The text messages and calls were all made to sell Bath Planet's goods and Bath Planet Seattle's services.

69. As explained above, during none of the calls or text messages did the telemarketer provide their last name or identify that they were calling from Bath Planet Seattle, thus violating the TCPA's prohibition against sending unidentified calls which do not name a specific sender or last name and the TCPA's identification requirements. 47 C.F.R. § 64.1200(d)(4).

70. The text messages were all sent to promote the Defendants' goods and services services, which were being offered to the Plaintiff for sale. They were therefore "commercial electronic text messages" under Washington law.

71. These text messages and calls all attempted to get the Plaintiff to purchase the Defendants' goods and services.

72. The text messages and calls were unwanted.

73. The text messages and calls were nonconsensual encounters.

74. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text messages and calls, which violated the TCPA, and the Washington CEMA and CPA.

75. Plaintiff never provided his consent or requested the text messages or calls.

76. Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

77. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

78. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendants encouraging the purchase of Bath Planet's goods or a Bath Planet Franchisee's services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **TPCA Identification Class:** All persons in the United States who (1) received more than one telemarketing text message or call from or on behalf of Defendants encouraging the purchase of Bath Planet's goods or a Bath Planet Franchisee's services, (2) within a 12-month period, (3), which such text message or call did not provide the called party with the name of the individual caller or the name of the person or entity on whose behalf the call is being made (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Washington CEMA Class:** All persons in the State of Washington whose (1) cellular telephone or pager numbers, (2) received a text message from or on behalf of Defendants encouraging the purchase of Bath Planet's goods or a Bath Planet Franchisee's services, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

79. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

80. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

81. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

82. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include, but are not necessarily limited to, the following:

   a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

   b. Whether Defendants has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    c.    Whether Defendants sent text messages or calls without providing the called party with the name of the individual caller or the name of the person or entity on whose behalf the call is being made;

    d.    The number of text messages Defendants sent to Washington residents' cell phones or pagers;

    e.    The corresponding degrees of direct and/or vicarious liability as between the Defendants and among themselves;

    f.    Whether Defendants should be held liable for violations committed on their behalf, if any; and

    g.    Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

83.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

84.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

85. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

86. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

87. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

88. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

89. These violations were willful or knowing.

90. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

91. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## Count 2

**Violations of the TCPA, C.F.R. § 64.1200(d)(4)**
**(On Behalf of Plaintiff and the TCPA Identification Class)**

92. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93. It is a violation of the TCPA to initiate any call for telemarketing purposes without providing the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 C.F.R. 64.1200(d)(4).

94. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls and/or text messages to be initiated to Plaintiff and members of the TCPA Identification Class without including the telemarketer identification information required by 47 C.F.R. 64.1200(d)(4).

95. These violations were willful or knowing.

96. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketer identification rule, Plaintiff and members of the TCPA Identification Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

97. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### Count 3

**Violations of the WA CEMA and CPA, RCW 19.190.060 and RCW 19.86**
**(On Behalf of Plaintiff and the Washington CEMA Class)**

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. It is a violation of the Washington CEMA to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service..." RCW 19.190.060.

100. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.* RCW 19.190.100; *Wright v. Lyft, Inc.,* 406 P.3d 1149, 1154-55 (Wash. 2017).

101. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the WA CEMA by initiating or assisting in the transmission of multiple electronic commercial text message to telephone numbers assigned to Plaintiff and other Washington residents for cellular telephone or pager service.

102. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of CEMA's restrictions, Plaintiff and members of the Washington CEMA Class are each entitled to an injunction and $500 in damages for each such violation. RCW 19.190.040.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, Internal Do Not Call Registry Class, and Washington CEMA Class respectfully request that the Court enter

judgment against Defendants for:

    A.    Certification of the National DNC Class as alleged herein;

    B.    Certification of the TCPA Identification Class as alleged herein;

    C.    Certification of the Washington CEMA Class as alleged herein;

    D.    Appointment of Plaintiff as representative of the Classes;

    E.    Appointment of the undersigned as counsel for the Classes;

    F.    Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5) and Washington State Law;

    G.    Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry;

    H.    Attorneys' fees and costs, as permitted by law; and

    I.    Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 1st day of June, 2025.

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com