IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARK HOFFMAN,** individually and on behalf of all others similarly situated, | Case No. 1:25-cv-06107 |
| *Plaintiff*, | Hon. Lindsay C. Jenkins |
| *v.* | **CLASS ACTION** |
| **BCI Acrylic, LLC** **d/b/a Bath Planet** | **JURY TRIAL DEMANDED** |
| **and** | |
| **Northwest Bath Specialists, LLC** **d/b/a Bath Planet of Seattle** *Defendants*. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NORTHWEST BATH SPECIALISTS, LLC'S MOTION TO DISMISS**

**INTRODUCTION**

The Court should deny Defendant Northwest Bath Specialists, LLC d/b/a Bath Planet of Seattle's ("Northwest's" or "Defendant's") motion to dismiss. Northwest's own evidence attached to its Motion to Dismiss demonstrates that personal jurisdiction over Northwest is proper in Illinois because Northwest entered into a "Dealership Agreement" with Defendant BCI Acrylic, LLC's subsidiary, Bath Planet, LLC, to sell the very products and services made by the illegal telemarketing conduct alleged here. Critically, that agreement, which is akin to a franchise agreement, contains an Illinois choice of law and forum provision that other Illinois Federal and Seventh Circuit courts have held to be sufficient for the exercise of specific personal jurisdiction in nearly identical contexts. For those reasons, the Court should deny Northwest's motion.

**BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS**

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as

a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

Plaintiff Mark Hoffman brought this action under the TCPA alleging that Defendant Northwest, as part of its business relationship with Defendant Bath Planet, made putative class members for purposes of promoting Defendants' goods and services without their prior express written consent despite being on the National Do Not Call Registry, a violation of the TCPA.

The Plaintiff alleges, and the Dealership Agreement confirms, that the relationship between Northwest and Bath Planet is essentially a franchise model. ECF No. 1 at ¶ 5, 6. As such, the Plaintiff alleges that the Court had specific jurisdiction over Northwest (referenced in the Complaint as Bath Planet Seattle) "because it is a franchisee of an Illinois-corporation, which such franchise agreement, upon information and belief, contains Illinois choices of law and forum." ECF No. 1 at ¶ 8. Indeed, Paragraphs 25 and 26 of *Northwest's own agreement* contain those provisions, stating that the "Agreement shall be interpreted and construed under the laws of

the State of Illinois, which laws shall prevail in the event of any conflict of law," and binding the parties to arbitration, which such "claim may only be filed to in County of Cook, State of Illinois, the exclusion of any other jurisdiction and judgment upon the award may be entered only in courts having a situs in Cook County, Illinois." ECF No. 19-2, PageID 114.

The Plaintiff also has alleged that the "calls were calls placed by Bath Planet Seattle as part of its franchise relationship with Bath Planet" and that Bath Planet provides "franchisees with leads, including from its own website, which franchisees like Bath Planet Seattle will call. In such a way, Bath Planet retains control over marketing conducted in its own name." ECF No. 1 at ¶ 35, 47. Northwest's contract with Bath Planet confirms these facts, as well. The Contract provides that Bath Planet would provide marketing resources to Northwest for which Northwest would remit payments to Bath Planet in Illinois, including a "monthly contribution" to a "national marketing fund," a "toll-free vanity phone number," and a "call routing service." ECF No. 19-2, PageID 118. Additionally, the payments for these services provided by Bath Planet would be remitted to Bath Planet at its Illinois address. ECF No. 19-2, PageID 104, 106. The Plaintiff also alleged that "Bath Planet Seattle is an exclusive franchisee and installer." ECF No. 1 at ¶ 45. The Contract contains this provision as well, prohibiting Northwest from "sell[ing] or install[ing] similar or competing products under any name, trademark or service mark during the term of this Agreement." ECF No. 19-2, PageID 106.

Northwest has moved to dismiss under to Rule 12(b)(2) arguing that the Court lacks personal jurisdiction over it. Northwest claims that it does not have an office in Illinois. ECF No. 19-1. Northwest claims that it cannot be subject to personal jurisdiction in Illinois because it does not sell any goods in Illinois, and because its employees and licenses are all held in Washington and Idaho, not Illinois. *Id.* However, Northwest also concedes that it uses the "Bath Planet"

trademarks pursuant to the terms of an "agreement" with Bath Planet. *Id.* The terms of that agreement were attached to the motion and are as explained above. Northwest was clearly not shy about doing business with an Illinois corporation, but now, facing a lawsuit arising out of this conduct here, it cries foul and does not want to defend such allegation here.

## STANDARD OF REVIEW

On a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing facts showing personal jurisdiction over the defendants. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). A *prima facie* showing that jurisdiction is proper will satisfy this burden. *See id.* A federal court enjoys personal jurisdiction over a defendant to the same extent as the Courts of the State of Illinois. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). An Illinois state court has jurisdiction either when the Defendant has consented to the exercise of jurisdiction (as in a contract), or if the Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2–209, grants jurisdiction, jurisdiction is consistent with the Illinois constitution, and if jurisdiction over the defendants complies with the due process requirements of the federal constitution. *Id.* In deciding such a motion, the court acts on much the same basis as a Motion to Dismiss under Rule 12(b)(6): it may receive and consider affidavits and evidence from both parties, but must resolve all factual conflicts in favor of the Plaintiff. *DeLuxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984).

## LAW AND ARGUMENT

**I.     The exercise of specific personal jurisdiction is proper because Defendant consented to personal jurisdiction, and/or because the Illinois long-arm statute is satisfied.**

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those

activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984).

      Here, there could not be a clearer basis for the exercise of specific personal jurisdiction on the basis of consent, as well as the very terms of the Dealership Agreement itself. As an initial matter, Northwest has already contracted with Bath Planet and agreed to submit any disputes it had arising out of its dealership agreement in Illinois. The Supreme Court recently confirmed its longstanding jurisprudence that "consent is a separate basis for personal jurisdiction." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 153 (2023) (Alito, J., concurring) (citing cases). To be fair, the Plaintiff does not claim any rights under the Bath Planet Dealership Agreement with Northwest. But the Plaintiff need not do so to nevertheless avail himself of the benefits of that agreement, particularly when this lawsuit arises out of conduct authorized by the agreement to which Northwest already agreed to submit any dispute as between it and Bath Planet to an Illinois law and forum agreement. And here, the contract involves an agreement between two parties defendant to agree to an Illinois forum. *See Mohamed v. Chicago Title Ins. Co.*, No. 10-C-753, 2012 WL 4955309, at *4 (E.D. Wis. Oct. 17, 2012). A nonparty to a contract can nevertheless involve a forum selection clause if the dispute is closely related to the agreement containing that clause. *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt. Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004). And here, there can be no question that the dispute here is closely related to the agreement containing that clause because the Agreement explicitly addresses the parties' advertising strategy and payment therefor that the Plaintiff alleges violated federal law.

      But even if the Court were to hold that the Plaintiff could not stand to benefit from

Northwest's consent under the Dealership Agreement, the dealership agreement points to facts as to the parties' course of dealings which is sufficient for the exercise of specific jurisdiction.

Generally speaking, a federal court may assert *specific* personal jurisdiction over a nonresident defendant when it commits "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Furthermore, the plaintiff's claims "must arise out of or relate to the" defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414. To demonstrate purposeful availment, the plaintiff need only show (1) that the defendant conducted some activity in the forum so as to subject it to personal jurisdiction there and (2) that the constitutional notions of fair play and substantial justice are satisfied such as to be consistent with due process requirements. *Burger King*, 471 U.S. 462, 464 (1985).

The first subpart of demonstrating purposeful availment is satisfied here. Personal jurisdiction over an out-of-state resident is consistently recognized in actions based on contracts to be performed in Illinois. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589–90 (7th Cir. 1984). Contract performance in Illinois is not a necessary condition for personal jurisdiction, and can, standing alone, be a sufficient basis for jurisdiction. *Id.* The Illinois long-arm statute reflects a purpose "to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause." *Id.* District Courts in Illinois, as well as the Seventh Circuit, routinely hold that there is a sufficient basis under Section 2–209(a)(1) of the Illinois Long Arm statute for specific personal jurisdiction where, as here, the moving defendant has entered into a franchise agreement with an Illinois corporation.

In *Midas Int'l Corp. v. Willard Enters., Inc.*, for example, the Court held that there was personal jurisdiction over the defendant when the plaintiff had its principal place of business in

Illinois, the individual franchisors negotiated the franchise and guarantee agreements through a series of long-distance telephone calls to Midas' Illinois headquarters, the franchise and guarantee agreements were not effective until executed in Illinois by Midas, the franchise agreements contained an arbitration clause naming Chicago, Illinois, as the forum for all arbitrations, the terms of the franchise agreements called for defendants to pay monthly rents and royalties directly to Midas' Chicago, Illinois, headquarters, and any payments by defendants under the guarantee agreements were to be made at Midas' Illinois headquarters. No. 92 C 03180, 1993 WL 92447, at *2 (N.D. Ill. Mar. 26, 1993). The *Midas* court further noted a similarity in the facts in that case to the defendants in *O'Hare Int'l Bank v. Hampton*, where guarantee contracts were "negotiated by defendants through a series of long-distance telephone calls to plaintiff's Illinois office, the contracts were not effective until accepted and executed in Illinois by plaintiff, and performance under the guarantee contracts was required to be made in Illinois. 437 F.2d 1173, 1176-77 (7th Cir. 1971). Significantly, there, as here, there were continuing obligations and control. *Id.* Subsequent decisions of this Court have similarly held. *E.g.*, *BAB Sys., Inc. v. UNK, Inc.*, No. 02 C 8797, 2002 WL 31867705, at *2 (N.D. Ill. Dec. 20, 2002) (holding that there was sufficient basis for jurisdiction under Section (a)(7) of the long-arm statute and holding it proper to "assert personal jurisdiction over Defendants for Plaintiffs' claims arising from the franchise agreements according to Illinois law.").

Northwest's contention that the franchise agreement is a mere "dealership" agreement is of no import. The agreement here is not a mere contract but rather a mutual agreement between the parties for the provision of certain branded services. As outlined above, the Dealership Agreement at issue here contains numerous identical elements that the *Midas* court and others have already held give rise to the exercise of specific personal jurisdiction. Just like in *Midas*, the

agreement here was governed by Illinois law and forum. The agreement appears to have been negotiated electronically via the internet. The agreement was not effective until executed by both parties, including in Illinois by Rich Hirschhaut, Bath Planet's Senior Vice President. The agreement contains an arbitration clause naming Cook County, Illinois, as the forum for all arbitrations, and provides for payments to be made to Bath Planet at Bath Planet's Palatine, IL address. And, unlike in *Midas*, the agreement obligated Northwest to purchase hundreds of thousands of dollars of minimum exclusive inventory of Bath Planet's products a year, and pre-paid for such things as a national marketing fund, foll-free phone number, and call routing service. Those goods were to be "manufactured and/or supplied by the Company or its designated affiliates" and shipped from Illinois into Washington. One could hardly imagine more facts showing purposeful ailment, given that a substantial amount of performance under the Dealership Contract for which the goods and services at issue were to be sold here via illegal telemarketing occurred in Illinois.

  The Dealership Agreement at issue embodies a consistent, continuous, and systematic course of dealing with Illinois that the Seventh Circuit has deemed sufficient for the exercise of jurisdiction in other contexts. By executing the dealership agreement, Northwest knew it was contracting to do business with a company located in Illinois and was put on reasonable notice that it could be haled into court here on a suit arising out of alleged illegal joint marketing practices. *RM Petroleum, Inc. v. LA Oasis, Inc.*, No. 03 C 3358, 2004 WL 406984, at *4 (N.D. Ill. Feb. 5, 2004). Viewing the agreement in the context of the "entire transaction of which it is a part," *Burger King*, 471 U.S. at 478-79, Bath Planet was to provide Northwest with a "maintenance and marketing fund designated to pay advertising, marketing and promotion expenses on behalf of all Dealers" and licensed its trademarks, which were then used to conduct

the illegal telemarketing complained of in the Complaint. Just as in *Burger King*, when a franchisee establishes a "substantial and continual" relationship with a franchisor located in another state, the franchisee subjects himself to personal jurisdiction in that state. *Id.* And, just as the Court observed in *RM Petroleum*, "although Plaintiffs were not parties to the Dealer Instruments at this time, these contacts are nevertheless relevant to the analysis because in breach of contract cases, the focus is on Defendants' contacts with the forum which relate to the contract itself," and not the substance of the dispute itself. 2004 WL 406984, at *4. And, just as there, it appears that Northwest has had further contacts with Illinois, such as receiving shipments from Illinois. *Id.* The cases cited by Defendant, including *Turner Diesel* and *Cutler*, are distinguishable because they involved incidental contacts, not ongoing marketing control here.

What's more, the course of dealing clearly relates to the cause of action here, particularly insofar as the lawsuit here also alleges a theory of agency liability. *Heritage House Rest's, Inc. v. Cont. Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990). The relationship between Northwest and Bath Planet was a continuing one that obligated the purchase and marketing for substantial quantities of product from Bath Planet in Illinois. *See id.* And here, Northwest transacted business in Illinois because it purchased its products from an Illinois corporation, its marketing for such products would have been a money making event for Northwest, and the Plaintiff's injury was a direct result of such marketing for the Illinois-manufactured product under the Illinois-based Bath Planet brand. *See Wiles v. Morita Iron Works Co.*, 152 Ill. App. 3d 782, 789 (1988) (rev'd. on other grounds). The marketing conduct at issue here lied "in the wake of the commercial activities by which [Northwest] to the jurisdiction of Illinois courts." *Heritage House*, 906 F.2d at 281 (citing *DeLuxe*, 726 F.2d at 1215). Indeed, the facts of *Heritage House* stand in clear similarity to those here, where plaintiffs alleged consumer protection claims arising

out of deceptive telephone calls. *Id.* Northwest contracted with an entity in this state to commit a tortious act out of this state. *Id.* Even if Plaintiff answered his phone in Washington, specific jurisdiction turns on whether his claims *relate to* Northwest's Illinois-directed contacts, not strict but-for causation. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021) (holding suits may proceed where the defendant extensively cultivated the forum market and the claims relate to that activity). Here, the agreement structures an Illinois marketing regime in that Bath Planet supervises and approves a marketing fund and imposes ongoing brand controls all tethered to Illinois law and Cook County arbitration. This suit relates to those forum-directed activities of the placement of illegal telemarketing calls.

      Based on the terms of the Defendants' agreement as between themselves, Northwest could have anticipated being haled into an Illinois court as a result of its attempts to market Bath Planet's products as it was authorized and obligated to do under the terms of the agreement. Plaintiff's choice of bringing this suit in Illinois, where the franchisor is located, is reasonable and fair under the circumstances. And, as the Court explained in *Midas*, the fact that nobody from Northwest has travelled to Illinois in the past five years is not dispositive: "[P]hysical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute. . . . A contractual relationship based solely on telephone and mail contacts may be sufficient to establish jurisdiction over a defendant." *Midas*, 1993 WL 92447, at *3 (citing *Heritage House*, 906 F.2d at 281 and *Cont. Bank N.A. v. Everett*, 742 F.Supp. 508, 511 n. 5 (N.D. Ill. 1990)).

      The second subpart of demonstrating purposeful availment is likewise here satisfied. Assuming that the plaintiff has demonstrated purposeful availment, the plaintiff must still demonstrate that the exercise of personal jurisdiction satisfies constitutional due process

requirements. The crux of the constitutional "due process analysis" is "foreseeability," "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

"When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *Id.* (cleaned up). As alluded to above, there can be no doubt that Northwest could reasonably anticipate being haled into court (or arbitration) for any dispute as between it and Bath Planet. Similarly, it could also reasonably anticipate being haled into court for any suit arising from the marketing or advertising conduct, expressly contemplated by and addressed in the agreement, just as with any other of the agreements terms, rights, and obligations. The due process analysis here is even more clear cut. Under the TCPA, unlike tort law for defective components furnished by third-party suppliers, for instance, a company can be held vicariously liable for texts or calls sent on its behalf by others. *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995); *May 2013 FCC Ruling [Dish Network]*, 28 FCC Rcd. At 6588 (¶ 37). The FCC has made clear that liability can attach even without a formal contractual or agency relationship or immediate direction and control of the third party who actually places the call. *Id.* at 6587 n. 107. As the FCC explained in the 2013 ruling in *Dish Network*, imposing vicarious liability on products sellers that hire companies to conduct their marketing is important because "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers." 28 FCC Rcd. at 6588.

Accordingly, companies can be liable under theories of (1) actual or "classical" agency, (2) apparent authority, and (3) ratification. *Dish Network,* 28 F.C.C. Rcd. at 6586-87.

"Because a [company] may be liable under the TCPA for the actions of its agent, a [company] also may be subject to personal jurisdiction in a given forum state based on the actions of its agent." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584 (S.D. Ohio 2016) (collecting cases). *A fortiori*, therefore, when a manufacturer is subject to general personal jurisdiction as an Illinois corporation, and where the dealership agreement expressly contemplates Illinois law, the dealership is likewise subject to specific personal jurisdiction when conducting marketing for the manufacturer's products as part of that agency relationship.

There is no evidence that Northwest will be subjected to undue hardship by defending this suit in Illinois. It has a contractual business relationship with Bath Planet obligating it to purchase hundreds of thousands of dollars of Bath Planet's products a year from Bath Planet in Illinois. The parties agreed to collaborate on advertising and marketing, and Bath Planet permitted Northwest to use its trademarks in furtherance of that advertising. The calls were made pursuant to the terms of the parties' agreement and orchestrated such conduct from Illinois, especially since "the conveniences of modern communication and transportation ease what would have been a serious burden" in the past. *ICG America, Inc. v. Wine of the Month Club, Inc.,* 2009 U.S. Dist. LEXIS 77151, 2009 WL 2843261 at *8 (D. Conn.).

The interests of Illinois in adjudicating this case are compelling as the alternative would be *more* burdensome for Plaintiff and Defendant Bath Planet by moving this case to Washington, whose only connection to this case is the fact that the Plaintiff is a Washington resident and Northwest domiciled there. Illinois has far greater interest because the both Defendants collaborated to advertise and do business in Illinois by soliciting consumers for Bath Planet's

products, an Illinois corporation. The interstate judicial system's interest in obtaining the most efficient resolution of the controversy also weighs in favor of the exercise of personal jurisdiction. If the Plaintiff and all similar plaintiffs were forced to file suit outside the state where the principal maker of goods and services is located in a telemarketing suit, fewer controversies would be resolved since it would require multiple witnesses to travel away from the district where the conduct was likely orchestrated. Finally, the shared interest of the states in furthering substantive social policies favors allowing plaintiff to bring suit here in Illinois, as Illinois has a substantial interest in subjecting those who avail themselves of the privilege of doing business in such a wonderful state the obligations of its laws.

Finally, in order for the exercise of specific personal jurisdiction to be proper, the plaintiff must also demonstrate that this suit "arises out of" or "relates to" the defendant's contact with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Here, the affiliation between the forum and the underlying controversy is obvious: Bath Planet, an Illinois corporation, contracted with Northwest to act as a dealership to market its own products and services pursuant to the terms of an agreement that addressed such conduct, its own trademarks, and contained Illinois law and forum clauses. Defendants jointly sent a campaign of telemarketing calls to the class Mr. Hoffman seeks to represent. As a result of that conduct, Mr. Hoffman received telemarketing calls which were made for an Illinois' corporation mutual benefit that is the subject of the instant agreement. Because Illinois can exercise general jurisdiction over Bath Planet, it is likewise straightforward and well-settled that it can exercise specific jurisdiction over Northwest for the claim here, too.

**II.      This Court should reject Defendant's attempts to transfer venue.**

As an initial matter, Defendant's attempts to transfer venue are premature until the Court rules on the discovery motion, and should not permit transfer without a more fulsome briefing.

*See RM Petroleum*, 2004 WL 406984, at *1 n.1 (refusing to consider motion to transfer). But even so, this Court should reject Northwest's attempts to transfer venue, as well, as there is no balance of inconvenience favoring transfer. *See Leonardo's, Inc. v. Greathall, Ltd.*, 714 F. Supp. 949, 954 (N.D. Ill. 1989). It bears mentioning that Plaintiff sued Northwest in Bath Planet's home district, and the Plaintiff's choice of law and forum is entitled to deference. *Id.* As such, the claims at issue relate to conduct which was orchestrated from this District. Additionally, this is a nationwide class action alleging misconduct on the part of both Bath Planet and its franchisees. Thus, most of the the relevant parties and witnesses will be located in Illinois, and class members will be located nationwide. The material events on which the class claims are based, including formulating, funding, supervising, and approving the national Bath Planet telemarketing program, occurred in Illinois, as opposed to the receipt of calls in Washington. On the convenience of witnesses, most of the relevant Bath Planet witnesses, including third parties with knowledge of brand and marketing approvals, and dealer compliance, are here. Northwest identifies no indispensable witnesses who can't be deposed remotely, and modern ESI moots the documents factor. Finally, local interests favor adjudication of this matter in Illinois because an Illinois manufacturer and brand designed, orchestrated, and paid for the marketing campaign at issue, not just with respect to Northwest, but its other franchisees as well. It is on this point that *Camarena*, cited by Defendant, is distinguishable. There, the automated calls were planned and originated *entirely* in the transferee state. Here, though some of the calls targeted Washington residents, they also targeted other states, and moreover, the conduct was orchestrated from Illinois.

**III.     If the Court does not deny Northwest's Motion outright, the Court should allow jurisdictional discovery.**

Should the Court not deny the motion outright, the Court should defer ruling on to allow

- 14 -

jurisdictional discovery. Plaintiff should be permitted to conduct jurisdictional discovery on extent of Northwest's involvement in the calls, it role in Bath Planet's marketing conduct, and Northwest's knowledge of whether they were doing business with an Illinois corporation. *See JT's Frames, Inc. v. Casares*, N.D. Ill. No. 16-cv-2504, 2018 U.S. Dist. LEXIS 23565, at *15-17 (Feb. 12, 2018) (allowing jurisdictional discovery as to personal jurisdiction where defendants submitted declarations denying any involvement in the fax that formed the basis of the complaint to "explore Defendants' involvement (if any) with the Fax that forms the basis of Plaintiff's [complaint.]"). The Court has authority to "require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." *Zurich Am. Ins. Co. v. Tangiers Internatl. LLC*, N.D. Ill. No. 18 C 2115, 2018 U.S. Dist. LEXIS 134701, at *5 (Aug. 9, 2018).

Here, for the reasons described above, Plaintiff respectfully submits that the Dealership Agreement is dispositive and should end the jurisdictional inquiry here. Nevertheless, in the event the Court is unsatisfied as to the sufficiency of the Agreement, or the Plaintiff's arguments developed therefrom, this Court should permit jurisdictional discovery. Such discovery would include issuing interrogatories and document requests with respect to the calls and its relationship with Bath Planet. Because jurisdictional discovery is often authorized in TCPA cases where vicarious liability is at issue, this Court should permit the same here. *See e.g. Goodell v. Van Tuyl Grp. LLC*, No. CV-20-01657-PHX-JJT, 2021 U.S. Dist. LEXIS 181193, at *14 (D. Ariz. Sep. 22, 2021).

## CONCLUSION

For the reasons above, the motion should be denied or leave for jurisdictional discovery given.

Dated: August 21, 2025 PLAINTIFF,

By:

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

- 16 -