IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS

| | |
|---|---|
| **MARK HOFFMAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BCI ACRYLIC, LLC D/B/A BATH PLANET**<br><br>**and**<br><br>**NORTHWEST BATH SPECIALISTS, LLC D/B/A BATH PLANET OF SEATTLE**<br><br>*Defendants.* | Case No. 1:25-cv-06107 |

**MEMORANDUM IN SUPPORT OF BCI ACRYLIC, LLC.'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Pursuant to Federal Rule 12(c), the Court should enter judgment on the pleadings dismissing Plaintiff Hoffman's claims against Defendant BCI Acrylic, LLC.[1] As demonstrated below, these claims fail as a matter of law because BCI had no interactions of any nature with anyone named Mark Hoffman, and Plaintiff has not pled, nor is there any material in the record that could possibly sustain a theory of vicarious liability for

---

[1] As explained in its Answer, BCI Acrylic, LLC is now known as Bath Concepts, LLC. For ease of reference in this motion Defendant BCI Acrylic, LLC n/k/a Bath Concepts, LLC will be referred to as "BCI."

any actions alleged to have been undertaken by Defendant Northwest Bath Specialists, LLC ("Bath Planet Seattle").

## BACKGROUND

On June 1, 2025, Plaintiff filed his action against Defendants BCI and Bath Planet Seattle, alleging that Bath Planet Seattle (not BCI) sent Plaintiff unsolicited phone calls and text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), the Washington State Commercial Electronic Mail Act, RWC § 19.190.060, *et seq.* (the "CEMA"), and by way of CEMA, the Washington State Consumer Protection Act, RWC § 19.86.[2] Plaintiff alleges that he received 37 calls and text messages placed by Bath Planet Seattle even after he registered for the National Do Not Call Registry in 2007. (Dkt. 18 ¶¶ 25-27, 35.) Following Bath Planet Seattle's calls and texts, on December 27, 2024, Plaintiff spoke to "Melissa from Bath Planet," and learned that the calls were placed by Bath Planet Seattle. (*Id.* ¶ 34-35.)

Plaintiff's sole basis for claiming BCI should face any potential liability is Plaintiff's rank speculation that BCI is a "franchisor that sells its products and services through franchisees like Defendant Bath Planet Seattle" that BCI "enjoyed the benefits of the widespread mass calling conduct by its franchisees, including Bath Planet Seattle" and that it is "liable as a franchisor for Defendant Bath Planet Seattle's conduct and telemarketing calls placed by Bath Planet Seattle. . . " (*Id.* ¶¶ 5, 41, 43.) Plaintiff supplied

---

[2] CEMA does not create a private right of action, but instead makes a violation of CEMA "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purposes of applying the consumer protection act." RCW 19.190.060(2). Thus, Plaintiff seeks damages through Washington's Consumer Protection Act.

2

no factual basis for these allegations in his Complaint; instead, pleads that the supposed franchise relationship exists "upon information and belief." (*Id.* ¶¶ 35, 45, 47, 50.)

In its answer, BCI denied each and every allegation that Defendants have a franchise-relationship. (*Id.*) And, BCI's answer affirmatively alleged that BCI only generates revenue from the sale of its products to installers, it plays no role in the installers' marketing efforts, and it had no knowledge of Bath Planet Seattle's actions or inactions taken regarding customer outreach. (*Id.* ¶ 48.)

On August 1, 2025, Bath Planet Seattle moved to dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. (Dkt. 19.) In support, Bath Planet Seattle attached two exhibits: (1) an affidavit of its corporate representative (Dkt. 19-1); and (2) the Dealership Agreement between BCI and Bath Planet Seattle (Dkt. 19-2).

Bath Planet Seattle's motion and corresponding exhibits disclaim BCI's involvement in the text messages and calls. (Dkt. 19 at 12 ("All material events leading to Plaintiff's claims occurred in Washington. . ."); *Id.* at 13 ("records relating to text messages sent to Plaintiff and any putative class members, and the system used to send those texts are in the Western District of Washington."); Dkt. 19-1 ¶ 17 ("[a]ny text messages sent from NW Bath are sent to Plaintiff or any putative class members [*sic*] were sent from its Washington state office."). They negate Plaintiff's baseless allegation that a franchise agreement governs Defendants' relationship. (*See generally* Dkt. 19-2.) And they also undercut Plaintiff's conclusory allegations that an agency relationship governs the Parties. (*Id.* at § 21 (asserting that Bath Planet shall be an independent contractor who was granted a license to sell and install BCI's products).) Given that the Agreement forecloses

3

Plaintiff's claim for vicarious liability under the TCPA, Defendant BCI files this motion for judgment on the pleadings.

## ARGUMENT

A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). Under this standard, Plaintiff's Complaint must be dismissed when plaintiff fails to plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, allegations that are conclusory, speculative, or otherwise fail to show more than a mere possibility that a defendant has acted unlawfully are grounds for dismissal. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). In ruling on a Rule 12(c) motion, the Court may consider affidavits, letters, and contracts referred to in plaintiff's complaint and central to his claim. *Id.*

Dismissal is warranted when the plain language of a contract attached as an exhibit or incorporated by reference indicates that the requested relief has no merit. *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir. 1995) (dismissing plaintiff's claim because the plain language of the agreement negates plaintiff's contractual cause of action); *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (denying plaintiff's allegations because they were contrary to loan documentation).

4

Moreover, Courts are encouraged to dismiss claims like Plaintiff's, where the factual allegations are so devoid that the Court would be effectively "sanction a fishing expedition that costs both parties, and the court, valuable time and resources." *Bissessur v. Indiana Univ. Bd. of Trs,*, 581 F.3d 599, 604 (7th Cir. 2009). Plaintiff's bare-boned pleadings are entirely devoid of any factual allegations implicating BCI for liability under TCPA and CEMA, and must be dismissed.

I. **Plaintiff Does Not Allege Direct Liability Against BCI Under the TCPA.**

To the extent Plaintiff's claims could be read as attempting to assert direct liability against BCI, the Court should dismiss Plaintiff's claims. Under the TCPA, direct liability only applies to entities that "tak[e] the steps necessary to physically place a telephone call." *Toney v. Quality Res., Inc.*, 75 F.Supp.3d 727, 742 (N.D. Ill. 2014) (finding plaintiff failed to state a claim for direct liability). And the mere fact that a company produces or sells a product does not render it liable for calls made by resellers of that product. *In re Joint Petition filed by Dish Network, LLC,* 28 F.C.C.Rcd. at 6574, 6583 ¶ 26 (2013). Plaintiff's claims must be dismissed. First, Plaintiff fails to plead facts showing that BCI physically placed the calls or texts to Plaintiff. And second, Plaintiff fails to allege that BCI had any control over Bath Planet Seattle in initiating contact with Plaintiff.

A. **All Parties Agree that Bath Planet Seattle Physically Contacted Plaintiff.**

Plaintiff alleges that Bath Planet Seattle, *not BCI*, sent the calls and text messages. (Dkt. 18 ¶ 29, 35.) Indeed, there is not a single allegation of the Complaint that directly alleges that BCI, itself, engaged in any affirmative conduct that would violate the TCPA. And Plaintiff fails to allege any facts showing that BCI assisted Bath Planet Seattle in

5

contacting Plaintiff. Instead, Plaintiff alleges he received confirmation that Bath Planet Seattle was the sender when he (1) spoke to Melissa from Bath Planet, and (2) corresponded with BCI who asserted that it had not made the calls or texts to Plaintiff. (*Id.* ¶ 34, 56.) Also, BCI denied all allegations that it called or texted Plaintiff, that it had ownership or control over the phone number used to call Plaintiff, and that it had any interaction with Plaintiff of any nature. (Dkt. 18 ¶¶ 29-34.) Moreover, Bath Planet Seattle's motion confirms that it was the party that texted Plaintiff and that it did so of its own volition. (Dkt. 19 at 12 ("Plaintiff alleges that NW Bath. . . sent or directed to be sent unsolicited text messages" and "texts messages sent from NW Bath are sent to Plaintiff. . . from its Washington state office."); Dkt. 19-1 at ¶ 17.)

What is not alleged only further drives home the point, that BCI did not engaged in any affirmative conduct at issue in this case. Indeed, Plaintiff does not allege that BCI exercised a degree of control over Bath Planet Seattle sending calls and texts to him. Plaintiff does not allege that BCI directed Bath Planet Seattle to make contact with Plaintiff, that BCI gave instructions, or that BCI detailed what to include in these messages. This, without more, is insufficient to state a claim for direct liability against BCI. Thus, any direct liability claims against BCI fail as a matter of law.

## II.     Plaintiff's Vicarious Liability Claim Under the TCPA Must Be Denied.

### A.     Plaintiff Fails to State a Plausible Agency Relationship.

To hold BCI vicariously liable under the TCPA, plaintiff must allege an agency relationship between defendant and the caller—whether through actual authority or apparent authority. However, Plaintiff's only basis for establishing vicarious liability is

6

that "upon information and belief" Defendants had a franchise relationship. (*See e.g.*, ¶ 35, 45, 47.) Plaintiff fails to describe the franchise agreement, attach the franchise agreement, or even plead facts showing how the alleged agreement (if it existed) establishes an agency relationship sufficient to impose TCPA liability. Thus, these naked assertions are mere speculation and cannot state a cognizable claim. *See Twombly*, 560 U.S. 544, 567 (2007) (finding that without further factual enhancement plaintiff's claims falls short). Moreover, BCI has denied the unsupported allegations of a franchisor-franchisee relationship and has denied that it exercised any control over Bath Planet Seattle's marketing efforts. (Dkt. 18 ¶¶ 28, 40, 41, 46, 47, 48, 51.) Finally, Bath Planet Seattle's motion confirms BCI's denials. (Dkt. 19 at 5 "Hoffman relies upon that baseless allegation to justify jurisdiction in this Court. . . ").

The pleadings demonstrate that BCI had no involvement in the calls or texts at issue, had no communication with Plaintiff, and no direct connection to the sender. Thus, Plaintiff's attempt to impute liability based on a speculative franchise theory is not only legally insufficient, but also impermissibly expands TCPA liability. These failures warrant dismissal of Plaintiff's vicarious liability claim.

      **B.**    **Affirmative Evidence Negates Any Purported Agency Relationship.**

Plaintiff's attempt to establish an agency relationship between Defendants rests entirely on the unsupported claim that a franchise agreement exists between BCI and Bath Planet Seattle. This assertion is not only conclusory, but it is directly contradicted by the record. Defendant Bath Planet Seattle attached the Agreement to its motion, which was incorporated by reference into Plaintiff's Complaint. (Dkt. 19-2.) As discussed below,

that Agreement expressly disclaims the existence of any agency relationship, undermining Plaintiff's theory of vicarious liability through actual and apparent authority.

### 1. The Agreement Disclaims Express or Implied Actual Authority.

Plaintiff's vicarious liability claim fails as a matter of law because he cannot establish actual authority. To meet its pleading requirements, Plaintiff was required to allege facts showing that a principal had actual authority—either expressly or impliedly—to authorize the agent to act on its behalf. Actual express authority requires an affirmative grant of power—not mere labels or conclusions. *See, e.g.*, *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011) (finding that agency did not arise by virtue of parties' marriage, but due to permission and control). Implied authority requires Plaintiff plead that the principal's words or conduct caused the agent to believe that the principal consented to the act. *Moore v. Charter Commc'ns., Inc.*, 523 F. Supp. 3d 1045, 1052 (N.D. Ill. 2020) (dismissing complaint because plaintiff fails to allege that principal acquiesced or consented to conduct).

Here, Plaintiff fails to establish actual authority between BCI and Bath Planet Seattle for two reasons. First, Plaintiff's entire agency argument hinges on the Agreement. However, nothing in the Agreement explicitly or implicitly gave Bath Planet Seattle authority to place outbound telemarketing calls and texts to Seattle residents. In fact, the Agreement stated that Bath Planet Seattle was required to comply with federal and state laws—which it allegedly did not do. (Dkt. 19-2 § 20.)

The plain language of the Agreement disproves Plaintiff's naked assertions: Section 21 provides that "Nothing in this Agreement is intended to constitute either party as an agent. . ." (Dkt. 19-2 at § 21(A)); That [Bath Planet Seattle] shall prominently display on all sales and installation contracts distributed to the public a statement, *which clearly indicates that the Dealer is independently owned and operated* and that [Bath Planet Seattle] *is not an agent of the Company*." (*Id.* at § 21(B) (emphases added)); That "nothing in this Agreement authorizes [Bath Planet Seattle], its agents or employees. . . to incur any debt or other obligation in the name of [BCI]." (*Id.* at § 21(C)); And, finally, that "[BCI] does not assume liability for and shall not be deemed liable for any act or omission. . . in the operation of [Bath Planet Seattle]." (*Id.* at § 21(D).) Thus, the Agreement's representation that the "Dealer is independently owned and operated" and that "Bath Planet Seattle is not an agent of the Company" negates any presumption of an agency relationship.

Second, Plaintiff's argument fails because a contractual relationship alone is insufficient to establish an agency relationship. *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (dismissing plaintiff's TCPA claim). Thus, to negate Defendants' express disclaimer of agency, Plaintiff was required to plead that Defendants' conduct contravenes this express disclaimer. *In re 35th & Morgan Dev. Corp.*, 510 B.R. 832, 853 (Bankr. N.D. Ill. 2014) (construing Illinois law to find no actual authority when plaintiff failed to plead conduct showing agency). And routine activities between defendants do not establish agency. *Scally v. Hilco Receivables, LLC,* 392 F.Supp.2d 1036, 1041 (N.D. Ill. 2005) (finding that the daily routine reports of activities did not give defendant control

9

over plaintiff). Hoffman merely alleges that Bath Planet Seattle's sale and installation of BCI products, in addition to branding, forms an agency relationship. (Dkt. 18 ¶¶ 46, 48). Yet, similar to *Scally*, these routine activities do not demonstrate BCI's control or authority over Bath Planet Seattle. Further, Plaintiff does not demonstrate how these activities affectively control Bath Planet Seattle. Thus, Plaintiff's failure to plead facts sufficient to show BCI's conduct establishing an agency relationship, or BCI's control over Bath Planet Seattle's unilateral telemarketing calls and texts, dooms his claim for vicarious liability under the TCPA.

### 2. Plaintiff Fails to Plead Facts Showing Apparent Authority.

To create apparent authority, the principal must speak, write, or otherwise act toward a third party. *Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016). That is, "apparent authority must derive from statements or actions of the alleged principal, not the alleged agent." *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014); *see also Bridgeview Health Care*, 816 F.3d at 939 (the principal's "conduct must make the third party reasonably believe that he has consented to an action done on his behalf by someone purporting to act for him.").

Here, Plaintiff fails to allege that BCI made any representations or engaged in any conduct—directly or indirectly—that could have led Plaintiff to reasonably believe Bath Planet Seattle was acting as its agent. Plaintiff actually confirms that he only received calls and texts from Bath Planet Seattle, and talked to Bath Planet Seattle personnel. (Dkt. 18 ¶¶ 25-27, 34-35.) And BCI represented to Plaintiff that it was not involved or responsible in sending the calls and texts to him. (*Id.*) Bath Planet Seattle's motion confirms that BCI

10

had no control over Bath Planet Seattle's marketing. (Dkt. 19 at 5; Dkt. 19-1 ¶¶ 12, 27 ("Northwest Bath only seeks out customers [in Idaho and Washington] where they are licensed to do business"); Dkt. 19-2 at 2 ("The relationship between the parties shall be that of a buyer and seller of Bath Planet Products.").). Thus, Plaintiff does not (and cannot) allege facts showing that BCI consented to the action being done.

### 3. Because Plaintiff Cannot State A Claim for Actual or Apparent Authority, Ratification Necessarily Fails.

A prerequisite to stating a claim for vicarious liability under a theory of ratification is the underlying agency relationship between the Parties. Restatement (Third) Agency § 4.03 cmt. b (2006) ("when an actor is not an agent and does not purport to be one, the agency law doctrine of ratification is not a basis on which another person may become subject to the legal consequences of the actor's conduct"). As discussed above, the Agreement provides that Bath Planet Seattle is an independent contractor, untethered to BCI. And Bath Planet Seattle confirms that it does not purport be an agent of BCI. (*See generally* Dkt. 19.) Thus, Plaintiff's ratification argument cannot subject BCI to the legal consequences of Bath Planet Seattle's unilateral acts.

To the extent that this Court finds that Plaintiff alleged facts showing either apparent or actual authority, Plaintiff must plead that the principal ratified the misconduct by "(a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(1). However, a principal "is not bound by a ratification made without knowledge of materials facts about the agent's act unless

11

the principal chose to ratify with awareness that such knowledge was lacking." *Id.* When Plaintiff fails to plead facts supporting an inference that a principal accepted the benefits of the wrongful conduct, its ratification theory fails. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014) (denying Plaintiff's ratification theory).

Plaintiff has not pled that BCI consented to Bath Planet Seattle's alleged unlawful calls and texts, nor that BCI had any knowledge of such conduct. Plaintiff's theory of ratification is based entirely on a purported franchise relationship between Defendants that does not exist. Specifically, Plaintiff claims BCI ratified Bath Planet Seattle's actions by failing to terminate a franchise agreement despite allegedly knowing of Bath Planet Seattle's misconduct. (Dkt. 18 ¶¶ 60–61.) However, the Agreement confirms that no franchise relationship existed between the Defendants. Thus, BCI had no authority to terminate a relationship that did not exist. Further, Plaintiff fails to demonstrate that BCI had any control over Bath Planet Seattle's operations or communications, or that it knowingly accepted any benefit from the alleged misconduct. Absent evidence of agency, knowledge, or benefit, Plaintiff's ratification theory fails as a matter of law.

III. **Plaintiff's Washington CEMA and corresponding CPA Claims Must Be Dismissed.**

Plaintiff's related Washington statutory claim's allegations overlap with its TCPA allegations, and suffer from similar defects. To state a claim under CEMA, Plaintiff must allege that the entity conducting business in Washington initiated or assisted in the "transmission of an electronic commercial text message to a telephone number assigned." RCW § 19.190.010(1). As discussed in the TCPA direct liability section above, Plaintiff

12

alleges that Bath Planet Seattle, *not BCI*, sent the calls and text messages. (Dkt. 18 ¶ 29, 35.) Bath Planet Seattle also admits that it contacted Plaintiff. (Dkt. 19 at 12 ("Plaintiff alleges that NW Bath. . . sent or directed to be sent unsolicited text messages" and "texts messages sent from NW Bath are sent to Plaintiff. . . from its Washington state office."); Dkt. 19-1 at ¶ 17.) Thus, Plaintiff's failure to plead facts showing that BCI initiated the call, disposes of its CEMA claim.

Not only does Plaintiff fail to plead facts showing that BCI *initiated* a commercial text message but also fails to allege facts showing that BCI *assisted* in sending those commercial text messages. CEMA defines "assistance" as offering "substantial assistance or support" enabling another to "formulate, compose, send, originate, initiate, or transmit" a commercial text message "when the person providing the assistance knows or consciously avoids knowing that the initiator of the [text message]" will or intends to violate the CPA. RWC § 19.190.010(1). Nowhere does Plaintiff show that BCI committed any act related to the commission of those messages—let alone that BCI formulated, composed, sent, originated, initiated, or transmitted them. In fact, Plaintiff has done nothing more than recite the bare-boned elements of CEMA, which is insufficient to state a cause of action. *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, *3 (E.D. Wash. Oct. 1, 2019) (dismissing Plaintiff's CEMA claim when Plaintiff merely provided an application to send messages, without more facts).

Lastly, to the extent that Plaintiff argues that the nonexistent franchise relationship alone satisfies the "substantial assistance[,]" requirement, that argument must fail. First, the Agreement refutes any existence of a franchise relationship and confirms that

13

Defendant BCI and Bath Planet Seattle are two independent entities. (Dkt. 19-2 at § 1 ("this agreement is made to establish the Dealer: (a) as an authorized seller and installer of the 'Bath Planet Products' of the Company, (b) as a duly licensed Licensee. . . to sue the name and trademark 'Bath Planet'. . . and (c) arrange for the legal disclosure of intellectual property and certain trade secrets. . . owned by the Company.") Second, the Agreement further demonstrates that BCI had no control over Bath Planet Seattle's compliance with the law in the sale, marketing and installation of BCI-manufactured products. (*Id.* at §§ 6, 20.) Bath Planet Seattle's motion confirms that BCI had no involvement in Bath Planet Seattle's customer outreach. (Dkt. 19 at 12.)

Thus, without specific facts, allegations of a fictitious franchise agreement cannot give rise to liability under CEMA. Plaintiff's conclusory CEMA claim, and corresponding CPA claim, must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the pleadings in Defendant BCI's favor and dismiss with prejudice all claims asserted against BCI.

Dated: October 8, 2025    Respectfully Submitted,

**MICHAEL BEST & FRIEDRICH, LLP**

*/s/ Ashni B. Gandhi*
Ashni B. Gandhi
**MICHAEL BEST & FRIEDRICH, LLP**
444 W. Lake St., Ste. 3200
Chicago, Illinois, 60606
T: 312-222-0800
F: 312-222-0818
ashni.gandhi@michaelbest.com

14

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing *Motion for Judgment on the Pleadings* was served upon all counsel of record via the Court's CM/ECF systems on the 8th day of October, 2025.

/s/ *Ashni B. Gandhi*
Ashni B. Gandhi