UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mark Hoffman, *Plaintiff*, v. BCI Acrylic, LLC d/b/a Bath Planet *and* Northwest Bath Specialists, LLC d/b/a Bath Planet of Seattle, *Defendants*. | No. 25 CV 6107 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Mark Hoffman filed this putative class action lawsuit against Defendants BCI Acrylic, LLC d/b/a Bath Planet ("Bath Planet") and Northwest Bath Specialists, LLC d/b/a Bath Planet of Seattle ("BP Seattle"). Hoffman, a Washington state resident, was the recipient of unwanted telemarketing messages from BP Seattle, and has consequently sought relief under the Telephone Consumer Protection Act ("TCPA") and Washington consumer protection laws. BP Seattle, a Washington-based company, moved to dismiss the lawsuit for lack of personal jurisdiction or, alternatively, to transfer venue. [Dkt. 19.] For the reasons below, the court grants the motion to dismiss and transfers the action in its entirety to the Western District of Washington.

I.  Background

Bath Planet is an Illinois-headquartered manufacturer of bathroom systems, such as showers and bathtubs. [Dkt. 1 ¶ 5.][1] BP Seattle, meanwhile, is a Washington-based seller of Bath Planet's products. [*Id.* ¶ 6.] Though the complaint alleges that BP Seattle is a franchisee of Bath Planet, *see id.*, Defendants' Dealership Agreement instead frames their relationship as "that of a [regional] buyer and a seller of Bath Planet Products" and specifically notes that BP Seattle "shall not be considered the agent or representative of" Bath Planet. [Dkt. 19-2 at 3, 11 ("Nothing in this Agreement is intended to constitute either party as an agent, legal representative, subsidiary joint venturer, partner, employee, or servant of the other for any purpose whatsoever.").][2]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[2] The Agreement is between Bath Planet and BP Seattle. [Dkt. 19-1.] Hoffman is not a signatory.

1

Mark Hoffman is a Washington resident whose phone number—with its "206" Washington area code—is listed on the National Do Not Call Registry. [Dkt. 1 ¶¶ 18–21, 27.] Despite this, on December 5, 2024, he received the first of (at least) thirty-seven calls and text messages from "Melissa with Bath Planet," who contacted him from a "253" number—also associated with Washington. [*Id.* ¶¶ 29–31.] Though Hoffman denies having ever been a Bath Planet customer, the messages purported to "follow up on [his] online inquiry for a complimentary quote." [*Id.* ¶¶ 28, 31.] Hoffman himself debates whether these messages originated in Washington,[3] but an affidavit from BP Seattle owner Charles Hartshorn confirms that they did. [Dkt. 19-1 ¶ 18 ("All of Northwest Bath's marketing programs are operated by employees out of its office in Spokane Valley, WA.").] The Dealership Agreement does, however, require Bath Planet to "[s]upervise, administer and manage a maintenance and marketing fund designated to pay advertising, marketing, and promotional expenses." [Dkt 19-2 at 5.] It also gives Bath Planet the option to "provide consultation and counseling . . . with respect to sales, merchandising and promotional operating techniques." [*Id.*]

As a result, Hoffman filed a putative class action against both Bath Planet and BP Seattle, alleging—on behalf of other non-consenting recipients of Bath Planet telemarketing, too—violations of the TCPA, its implementing regulations, and the analogous Washington Consumer Electronic Mail Act ("CEMA").

## II. Legal Standard

To decide a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). If, as here, the defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi Synthelabo*, S.A., 338 F.3d 773, 782–83 (7th Cir. 2003) (collecting cases across circuits). If the plaintiff fails to offer evidence of his own, the presumption flips and the court "will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record." *Curry*, 949 F.3d at 393. It resolves factual conflicts in the plaintiff's favor. *Id.*

Similarly, to decide a motion to transfer venue, the court accepts as true all well-pleaded facts set forth in the complaint, except those "contradicted by affidavits or other appropriate evidence from the defendant." *Thomas v. Illinois Cent. R.R. Co.*, 2025 WL 1638475, at *1 (N.D. Ill. June 9, 2025) (quotations and citation omitted).

---

[3] The complaint alleges that "the sending and orchestration of the illegal calls . . . occurred in" Illinois. [Dkt. 1 ¶ 9.] It also states that, upon information and belief, "calls [were] placed by Bath Planet Seattle as part of its franchise relationship with Bath Planet," and that Bath Planet "did not place the calls." [Dkt. 1 ¶¶ 35, 56.]

**III. Analysis**

Personal jurisdiction need not be established before resolving questions relating to forum convenience. *Adamczyk v. Miller*, 2017 WL 11884322, at *2 (N.D. Ill. Mar. 29, 2017). But when a court can "readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). Here, the court lacks personal jurisdiction over BP Seattle and, pursuant to 28 U.S.C. § 1631, concludes that a transfer to the Western District of Washington is warranted. A transfer analysis under 28 U.S.C. § 1404(a) would yield the same result.

**A. Personal Jurisdiction**

In cases invoked under federal question jurisdiction, such as those arising under the TCPA, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 589 (7th Cir. 2021) (quotations and citation omitted). Because the TCPA does not authorize nationwide service of process, the court may exercise jurisdiction "only if authorized both by Illinois law and by the United States Constitution." *Id.* Illinois "permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," and so the court "proceed[s] with a federal due process analysis." *Id.* at 590. BP Seattle, then, must possess "minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up).

Here, Hoffman's complaint alleges that the court has specific personal jurisdiction over BP Seattle [Dkt. 1 ¶ 8.], which requires it to have "purposefully directed [its] activities at [Illinois] or purposefully availed [itself] of the privilege of conducting business in" Illinois. *Bilek,* 8 F.4th at 589. Hoffman's alleged injury must then arise out of BP Seattle's "forum-related activities." *Id.* He alleges that such jurisdiction exists because BP Seattle "is a franchisee of an Illinois-corporation, which such franchise agreement, upon information and belief, contains Illinois choices of law and forum." [Dkt. 1 ¶ 8.] This forum selection clause, he argues, evidences both the company's "consent" to be sued in Illinois and "purposeful availment." [Dkt. 22 at 6–12.] The court disagrees.

Regarding consent, a non-signatory to an agreement may enforce forum selection clauses only if it possesses "an 'affiliation' or mutuality' with a contracting party." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1054 (N.D. Ill. 2015) (quoting *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 439 (7th Cir. 2012)). "Affiliation means that the non-signatory shares a corporate relationship with a signatory," such as parents and their subsidiaries, while mutuality is the "principle that if a signatory can enforce the forum selection clause against a non-signatory, then the non-signatory should be allowed to do the same." *Id.* Neither is true here;

3

Hoffman is neither affiliated with BP Seattle nor in contract with it. Though he argues that *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt. Ltd.*, 364 F.3d 884 (7th Cir. 2004), permits non-parties to invoke forum selection clauses "if the dispute is closely related to the agreement containing that clause," he misreads the case. [Dkt. 22 at 6.] *Am. Patriot Ins. Agency, Inc.* presents a classic example of affiliation: a signatory plaintiff sought to sidestep a forum selection clause with one company by suing its non-signatory affiliate. *Id.* at 889. It cannot be read to permit a non-signatory plaintiff to enforce a forum selection clause *among* corporate affiliates.

Hoffman is also incorrect in arguing that, through its relationship with Bath Planet, BP Seattle purposefully availed itself of the privilege of conducting business in Illinois. As an initial matter, TCPA claims (and their state analogs) are "considered an intentional tort for jurisdictional purposes." *Woodward v. Humana Inc.*, 2024 WL 1363713, at *2 (N.D. Ill. Mar. 29, 2024). Thus, the issue is not purposeful availment, which is commonly a breach-of-contract inquiry, but whether "the conduct underlying the claims was purposely directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). *See also Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (observing that "the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue" and pressing the corresponding "tort-vs.-contract distinction"). The contract cases that Hoffman cites, which generally involve suits between contract signatories, are inapposite.

Three requirements determine "whether conduct was 'purposefully directed' at the forum state: '(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state.'" *Id.* at 674–75 (quoting *Tamburo*, 601 F.3d at 703). Hoffman focuses on BP Seattle's purchase of products from an Illinois corporation, which it then marketed (in Washington) causing his injury. [Dkt. 22 at 10.] But it's the directed-at-Washington marketing, not any directed-at-Illinois purchases, that would give rise to an injury.

Hoffman also errs in emphasizing that "Bath Planet was to provide [BP Seattle] with a 'maintenance and marketing fund designated to pay advertising, marketing and promotion expenses on behalf of all Dealers' and licensed its trademarks, which were then used to conduct the illegal telemarketing complained of in the Complaint." [*Id.* at 9–10.] This refers to conduct on Bath Planet's part—not BP Seattle's—and in any event is not itself tortious.

Similarly, Hoffman cites agency caselaw in his opposition brief but incorrectly flips the directional arrow. Stating that, because a company may be liable under the TCPA—and thus subject to personal jurisdiction—based on the actions of its agent, it follows "*a fortiori*" that "when a manufacturer is subject to general personal jurisdiction as an Illinois corporation, and where the dealership agreement expressly contemplates Illinois law, the dealership is likewise subject to specific personal

4

jurisdiction when conducting marketing for the manufacturer's products as part of that agency relationship." [*Id.* at 13 (citing *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584 (S.D. Ohio 2016) (collecting cases).] This misunderstands how liability flows between principals and agents.

In sum, Hoffman has failed to allege that, through its relationship with Bath Planet, BP Seattle has consented to suit in Illinois or otherwise directed tortious actions toward the state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") Accordingly, this court cannot exercise personal jurisdiction over BP Seattle.

### B.     Transfer Under 28 U.S.C. § 1631

When dismissing for lack of jurisdiction, courts in the Seventh Circuit have an "independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). Thus, "if it is in the interest of justice," this court must transfer the action to "any other such court . . . in which the action . . . could have been brought at the time it was filed." § 1631.

If Hoffman was pressing up against a statute of limitations, transfer would be clearly in the interest of justice. *See North*, 72 F.4th at 228. And if the claims were obviously frivolous or in bad faith, the opposite would be true. *See Seoul Semiconductor Co. v. Finelite, Inc.*, 2025 WL 1262396, at *2 (9th Cir. Apr. 24, 2025). But neither circumstance is present here.

Generally, "[i]f a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *North*, 72 F.4th at 228 (quoting *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020)). If BP Seattle were the only defendant, then, this court would be inclined to stop there. But BP Seattle is not the only defendant, and simply dismissing the claims against it would leave behind Bath Planet. If Hoffman did refile elsewhere, the case would be inefficiently bifurcated, and so it would serve "the interests of judicial efficiency and economy to transfer this action to a district where both personal jurisdiction and venue are proper as to all Defendants." *Adams v. BRG Sports, Inc.*, 2017 WL 5598647, at *6 (N.D. Cal. Nov. 21, 2017) (transferring under § 1631).

Indeed, in the 28 U.S.C. § 1404(a) transfer context, the "'interest of justice' analysis relates . . . to the efficient functioning of the courts." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). The Seventh Circuit's decision in *North* suggests that the interest-of-justice analyses overlap, and so on efficiency grounds— and for other reasons discussed below—transfer is in the interest of justice. 72 F.4th at 229 ("Because the interests of justice do not require transfer under § 1631, they do

5

not under § 1404(a) either.") Plus, BP Seattle itself raised transfer as an appropriate alternative to dismissal.

The action may then be transferred to any court in which it could have been initially filed, *i.e.*, where venue and personal jurisdiction are proper. BP Seattle moved to transfer to the Western District of Washington, where both it and Hoffman are located—and where, based on the affidavit, marketing occurs. [Dkt. 19 at 10; Dkt. 19-1 ¶ 18.] No issues exist, then, regarding venue or personal jurisdiction as to BP Seattle. And, while the extent of Bath Planet's relationship with BP Seattle (and its marketing) is contested, the alleged relationship provides the only plausible basis for Bath Planet's liability, which would then *also* permit the exercise of personal jurisdiction. *See Bilek,* 8 F.4th at 591 ("attributing an agent's actions to a principal which are intertwined with the very controversy at issue is consistent with the purposeful availment requirement underlying the Supreme Court's specific personal jurisdiction precedent").

Transfer to the Western District of Washington is therefore warranted.

## C. Transfer Under 28 U.S.C. § 1404(a)

Hoffman also argues that "attempts to transfer venue are premature" until the court considers jurisdictional discovery. [Dkt. 22 at 14.] But where "'personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course' to determine the proper forum." *Adamczyk v. Miller*, 2017 WL 11884322, at *2 (N.D. Ill. Mar. 29, 2017) (quoting *Sinochem Int'l Co.*, 549 U.S. at 436). Here, as BP Seattle argued in its (alternative) motion to transfer under § 1404(a), those considerations *also* favor transfer to the Western District of Washington.

To be thorough, and to the extent these interests support transfer under § 1631, the court addresses them in turn. They relate both to the convenience of the parties and witnesses, as well as the interest of justice, i.e. efficiency.

### 1. Convenience

Five factors inform the court's convenience analysis: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." *Castanon v. Illinois Cent. R.R. Co.*, 2025 WL 2076733, at *2 (N.D. Ill. July 23, 2025) (quotations and citation omitted). *See also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)*; S. Capitol Bridgebuilders v. Lexington Ins.*, 2021 WL 1426888, at *2 (N.D. Ill. Apr. 15, 2021) ("[t]hese considerations are often referred to as the 'private interest factors'").

6

First, courts generally give "substantial weight" to a plaintiff's choice of forum, though "less deference is afforded where, as here, the plaintiff's chosen forum is not his home forum." *Castanon*, 2025 WL 2076733, at *2; *Thomas*, 2025 WL 1638475, at *2 (court owes "substantially reduced" deference to choice of plaintiff living outside district). It is further diminished "when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events." *Id.* at *2 (quotations and citation omitted). And courts give even "less deference to a putative nationwide class representative's choice of forum." *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 1003 (N.D. Ill. 2023). Hoffman is a Washington resident, and—as detailed below—both the material events and putative classes are likely concentrated in Washington. Therefore, the court affords minimal weight to his choice of forum.

Second, courts consider the situs of material events, which include "not just … where [a defendant's] decisions were made, but also where the calls and texts were received." *Sojka v. DirectBuy, Inc.*, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014). Hoffman argues that "[t]he material events on which the class claims are based, including formulating, funding, supervising, and approving the national Bath Planet telemarketing program, occurred in Illinois, as opposed to the receipt of calls in Washington." [Dkt. 22 at 15.] But the caselaw is clear that both locations are relevant and, when conduct is not concentrated in either, the factor is neutral and afforded reduced weight. *Sojka*, 2014 WL 1089072, at *2; *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015).

Here, however, conduct *is* concentrated in Washington. There is no dispute that the messages were *received* there. And though Hoffman alleges that "the sending and orchestration of the illegal calls to sell products … occurred in" Illinois [Dkt. 1 ¶ 9], he also acknowledges that Bath Planet told him "it did not place the calls." [*Id.* ¶ 56.] He also alleges upon information and belief that the "calls [were] placed by Bath Planet Seattle as part of its franchise relationship with Bath Planet." [*Id.* ¶ 35.] Moreover, Hartshorn's affidavit declared that all "marketing programs are operated by [BP Seattle] employees out of its office in Spokane Valley, WA." [Dkt. 19-1 ¶ 18.] So, the messages were both *received* and *sent* in Washington.

That leaves planning. Though Hoffman's allegation that Bath Planet "control[s] the content of Bath Planet Seattle's marketing" is challenged by the affidavit [Dkt. 1 ¶ 51], it remains plausible that Bath Planet, which maintained a marketing fund, played some role in planning [Dkt. 19-2 at 5]. Even so, since marketing is operated out of Washington, planning is, at minimum, split across both jurisdictions. Meanwhile, the sending and receipt of unwanted messages occurred entirely in Washington. On balance, the facts suggest the material events were concentrated in Washington, weighing in favor of transfer.

Third, in the "computerized era of litigation, parties are no longer unduly burdened by the prospect of transferring mass amounts of electronic data and

information," and so "little, if any, weight [is given] to the factor of access to sources of proof." *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013); *Castanon*, 2025 WL 2076733, at *3. This would be different if there was physical evidence or any need for an on-site visit, but it's hard to imagine either in a TCPA case. The court is not moved by BP Seattle's argument that transferring "records relating to text messages . . . would impose an unnecessary burden and expense," and it declines to place any weight on the factor. [Dkt. 19 at 12.]

Fourth, outsized consideration is given to the convenience of witnesses—particularly non-party witnesses. *Castanon*, 2025 WL 2076733, at *3 ("convenience of the witnesses is the most important factor in the transfer analysis"). Neither party identifies any with specificity. Hoffman vaguely references "third parties with knowledge of brand and marketing approvals, and dealer compliance," but to the extent they aren't Bath Planet or BP Seattle personnel, it's unclear who they are and why they would be more likely to reside in Illinois than anywhere else. [Dkt. 22 at 15.] BP Seattle, meanwhile, only mentions personnel. [Dkt. 19 at 13.][4]

So, shifting to personnel witnesses, the facts suggest Washington is the more convenient forum. Per Hartshorn's affidavit, all BP Seattle's employees "work at facilities located in Washington and work exclusively in Washington with the exception of sales and installations in Idaho, a bordering state." [Dkt. 19-1 ¶ 16.] They would *certainly* be relevant witnesses, as opposed to Bath Planet's Illinois-based personnel, whose involvement is tied to speculative marketing approvals—the existence of which are called into question by the affidavit and Dealership Agreement.

Finally, as to party convenience, BP Seattle "has the burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Castanon*, 2025 WL 2076733, at *4. Again, BP Seattle and its personnel are entirely based in Washington and the surrounding region. Hoffman, meanwhile, cannot—and does not—challenge Washington as inconvenient to him, since he resides there. [Dkt. 1 ¶ 21.] And while two of the three putative classes are national, the lone region-specific class comprises "persons in the State of Washington." [*Id.* ¶ 78.] Therefore, declining to transfer would inconvenience BP Seattle, while doing so is presumably more convenient to Hoffman and putative class members. This factor favors transfer, too.

Thus, on balance, the private interest factors favor transfer.

---

[4] As it is required to do, BP Seattle states that personnel would likely testify to "(a) the facts and circumstances regarding the text messages allegedly sent to Plaintiff; (b) the facts and circumstances regarding Plaintiffs' communication with [BP Seattle] and of him providing his phone number to it; (c) [BP Seattle's] practices in sending text messages to potential customers; (d) [BP Seattle's] system used to send text messages; and (e) [BP Seattle's] books and records." [Dkt. 19 at 13.]

### 2. Interests of Justice

In assessing the interests of justice, the court considers "(1) the relationship of the community to the controversy and respective desirability of resolving controversies in each locale; (2) each court's familiarity with applicable law; and (3) the congestion of the respective dockets and prospects of earlier trial." *Thomas*, 2025 WL 1638475, at *3. *See also Research Automation, Inc.*, 626 F.3d at 978 (7th Cir. 2010); *S. Capitol Bridgebuilders*, 2021 WL 1426888, at *2 ("the 'public interest factors'"). All three weigh in favor of transfer.

First, most allegations refer to messages sent by BP Seattle. Washington residents, like Hoffman, were the likely targets. The community in Washington thus has the strongest interest in enforcing state consumer protection laws against local employers. *See Camarena v. Vanderbilt Mortg. & Fin., Inc.*, 2015 WL 4036258, at *4 (N.D. Ill. July 1, 2015) ("material events occurred in [transferee] state, in the sense that the automated calls were planned and originated there," and so the transferee state "has the greater interest in resolving this controversy and the more meaningful relationship with it").

Second, Hoffman pursues both federal and state law claims. The latter, which arise under Washington law and which are more familiar to federal courts in Washington, tip the scale toward transfer, too.

Finally, the Western District of Washington has both a less congested docket and a faster time to trial than the Northern District of Illinois. *Federal Court Management Statistics, June 2025*, UNITED STATES COURTS, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-june-2025 (475 versus 1,085 pending cases per judge, and a 24.3-month versus 56.4-month time to trial).

Thus, even if this court hesitated before ruling on personal jurisdiction, the circumstances would still warrant transfer under § 1404(a).

### IV. Conclusion

For the foregoing reasons, the court grants BP Seattle's motion to dismiss under Rule 12(b)(2) and, pursuant to 28 U.S.C. § 1631, directs the clerk to transfer this entire action to the United States District Court for the Western District of Washington.

Enter: 25-cv-6107
Date: October 10, 2025

Lindsay C. Jenkins

9